HARRELL, J.,
dissenting, which GREENE, J., joins.
Technically, I dissent, although I agree with much of the Court’s opinion. The only point upon which I part company with the Majority is with regard to admitting Nurse Harden’s testimonial response (to the prosecutor’s legitimate question) that her findings from her physical examinations of Laura B. “would verify” what Laura B. told her. Contrary to the analysis and conclusion of the Majority opinion that allowing the response to be considered by the jury was not error and, if *745 error, was harmless (Maj. op. at 734-37, 98 A.3d at 257-59), I would find error and a quite harmful one, to boot. Accordingly, I would reverse the judgment of the Circuit Court and remand the case for a new trial.
As the Majority opinion concedes, “the word ‘verify’ ... might well suggest that [Nurse Harden] had assessed Laura B.’s statement to her to be the one true version of events.” Maj. op. at 734, 98 A.3d at 256. Yet, the Majority opinion engages thereafter in a rationalization, based on linguistic gymnastics, that it could have meant something else in the greater context here. Although such an analysis may beguile some jurists and lawyers, one should not lose sight of who the fact finder was at Brooks’s trial — a jury of his peers. I do not accept that they, unpracticed most likely in the ways of legal legerdemain, would perceive what Nurse Harden said in such a caged manner as the Majority opinion imagines, nor am I willing to assume, at Brooks’s expense, that was the case here.
As the Majority opinion must concede, “verify” usually means “to establish the truth.” That is the sense most often associated with that word by lay people and lexicographers. See, e.g., Merriam Webster’s Collegiate Dictionary 1312 (10th ed. 1993) (“verify” — “to establish the truth, accuracy, or reality of’). This is what, for present purposes, we must assume the jury understood. It was prejudicial error for the jury to have been permitted to consider Nurse Harden’s answer. Her reply was more than simply saying that Laura B.’s version was not excluded as an explanation of her injuries. The use of the term “verify” suggested that it was the one “true” version. This was analogous to the social worker’s testimony in Bohnert v. State, 312 Md. 266, 539 A.2d 657 (1988), based on a child’s statements that the victim’s behavior showed that she was in fact a victim of sexual assault. Both statements amount to telling the jury that the alleged victim was telling the truth and, by strong implication, the defendant was not. See Bohnert, 312 Md. at 275-76, 539 A.2d at 661-62.
Just as this Court in Bohnert held that the trial court’s error in admitting the social worker’s impermissible reflection *746 on the victim’s testimony warranted a new trial, the trial court’s error in admitting Nurse Harden’s testimony was not a harmless error and warrants a new trial in this case. The standard of review for harmless error is:
[W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed “harmless” and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of — whether erroneously admitted or excluded— may have contributed to the rendition of the guilty verdict.
Dorsey v. State, 276 Md. 638, 659, 350 A.2d 665 (1976) (emphasis added).
We have been reluctant to hold that an error was harmless when the error could have affected the jury’s assessment of the credibility of either the defendant or the victim, and when the outcome of the trial hinged on whether the jury believed the defendant’s or the victim’s version of events. See, e.g., Clemmons v. State, 352 Md. 49, 720 A.2d 1170 (1998) (finding that the trial court’s error in admitting evidence that a co-defendant had pled guilty to the same crime was not harmless and stating that the outcome of the case “depended largely on credibility — which of two versions the jury was going to believe); Beales v. State, 329 Md. 263, 619 A.2d 105 (1993) (holding that the trial court’s error in admitting evidence of the defendant’s prior theft conviction was not harmless and noting that the relative validity of the prosecution and defense’s different accounts of the incident “depended largely on the credibility of the witnesses”).
Although there was other evidence to corroborate Laura B.’s testimony (e.g., the observations of the law enforcement officers at Laura B.’s house when they arrested Brooks, Nurse Harden’s testimony as to the injuries she observed on Laura B., and the photographs of Laura B. taken on the night of the alleged rape), the evidence of physical injuries was not itself *747 conclusive as to whether a rape occurred, as evidenced by Nurse Harden’s admission, on cross-examination, that “women can be injured during [unforced] sex.” Because the outcome of the case depended largely on whether the jury believed Laura B.’s or Brooks’s version of events, I am not prepared to declare that the trial court’s admission of Nurse Harden’s testimony — that her findings would “verify the story” that Laura B. told her — was harmless beyond a reasonable doubt.
Judge Greene authorizes me to state that he joins the views expressed here.